The next case is Dennis McLain v. Secretary, Department of Veterans Affairs. Joseph Magri is here for the appellant. McLain, Sean Sikinen is here for the secretary. And Mr. Magri, you may begin when you're ready. Dennis McLain v. Secretary, Department of Veterans Affairs Good morning. Good morning. I submit that this decision in this case is controlled by the Supreme Court's decision in Babb v. Wilkie and the Eleventh Circuit's decision in Babb v. Secchi. Those cases interpret the meaning of the free-for-many language that controls the federal employee discrimination statutes for age and under Title VII. Their decisions created a legal framework and determined how one goes about determining whether or not there is a violation. That framework is not in the jury instructions in this case. And, in fact, the jury instructions are primarily based on the simple, traditional, but-for test of gross nasser, which the Supreme Court expressly rejected as being inapplicable to the free-for-many language. Didn't the district judge here have the benefit of the Supreme Court's decision in Babb v. Wilkie when he put these instructions together? Did he understand that? Did he hear argument about that? Oh, yes. Well, he was aware of Babb v. Wilkie when he put the instructions together. And he took the Supreme Court's decision into consideration in formulating the jury instructions. I assumed it. Yes, on the Babb point. It made it to the actual instructions. So the government's brief on page 27, and I hate to just throw a citation at you, but so they have this little breakdown on page 27 of things that you requested to be in the instructions and that the district court put in the instructions about this. And so, like, what do you say about that? That, like, you requested some language be put in the instructions about this. The district court took your language and put it in the instructions. Isn't that sort of good enough? You know, I think that's the government's argument. Yeah, it's not. Okay. Because what I requested was markedly different than what was actually put in the instructions. Okay, how so? Well, I went through the Babb legal framework, where I discussed first differential treatment and how that is shown. Then I had the full relief portion, which was burdenship to Mount Healthy and Texas v. Lissage for the government to avoid full relief. But what we put in, and I think I cited in my brief where my proposed jury instructions were on this issue, we put in a description which discussed amongst other things the notion of consideration during the process of making a decision, which is not the basis of these instructions. Moreover, the jury is instructed in any case, and was in this, to consider the instructions as a whole. You can't look at these instructions from beginning to end and see the Babb case. You cannot see what little language they did out of power. So let me just drill down on this and ask you to address the specific language that the district court did give. So we're talking about the third element here. And I'll just say I agree that the district court could have done this better, and my questioning is basically just did the district court do enough? So these are not perfect jury instructions in my mind. So the district court said to the jury, federal sector law commands that personnel actions shall be made free from any discrimination. Discrimination in this context includes retaliation and means differential treatment, thus it imposes the duty of making, that is rendering or producing, personnel actions untainted by any consideration of retaliation. In other words, the plaintiff's protected EEO activity cannot play any part in the decision that was made. That's from Doc 253, page 12. Why isn't that good enough to get this Babb point across? One of the big problems, if it is, that's my claim according to these instructions. These instructions have a description at the beginning of what the essential evidence are that ties everything to the ultimate decision. The adverse actions, wherever that appears, is the ultimate decision. And the problem with these instructions is they so tie everything to the ultimate decision that it violates both bad cases, which recognize that for differential treatment, the action does not have to even affect the ultimate decision. It just has to occur in the process. What about question number three on the verdict form, which was, was the plaintiff treated differently because of his protected EEO activity and protected activity played a part in the way one or more personnel actions were made? And the answer was no. If the jury concluded that it didn't even play a part in it, how can your client show that he was prejudiced? What they determined was based on what they were instructed. And the entire instruction totally took away Babb v. Wilkie. You can't instruct a jury on the simple, traditional test before a phrase, after a phrase, and tie the phrase that we're talking about here, that was made from what I was suggesting, to the ultimate decision. You can't expect the jury to then make the decision on that statement appropriately. So I'm sorry, so what was your response? Just to follow up on this, so when the district court said, in other words, the plaintiff's protected EEO activity cannot play any part in the way the decision was made, you agree that's a correct statement of Babb, right? Yes, although it's not what the jury instructions ought to be. The jury instructions ought to be what the Supreme Court said, which goes a little beyond that. And they have to reflect that it doesn't have to affect the ultimate decision. This actually ties it to the ultimate decision. It's got the simple, traditional test in several jury instructions that I lay out in my reply. I actually replied to the government's argument in quite some detail in my reply, and there's several places before where it's all the simple, traditional test. The only thing after it is the simple, traditional test, including single motive instructions. It swamps the word, the tiny portion of the instructions I suggested that is in here, and it couches it as the plaintiff's claim. It is the jury was instructed on the simple and traditional test. That's what these instructions were. They were nothing else. I mean, your point is well taken, that in some spots I agree with Judge Brasher. I don't think it's quite right, but I don't think it's true that there's nothing else. I think we see in several spots throughout the instructions the more general statements, a few of which have already been read. Why isn't that enough to give the jury the right idea under the fairly generous, frankly, standards that we have for jury instructions? Well, the jury instructions can't mislead. No matter what one wants to describe about the nature of jury instructions, they can't mislead. There is no description here of the BAB legal framework. There is no description here that makes sure that the differential treatment was separately instructed on and separately decided by the jury because the jury was told that they have to consider the entire instructions and they have to apply those entire instructions when they're filling out the jury form, and they surely follow that instruction. That's what juries do, but the fact of the matter is the instructions in total were wrong. I have one question before your time's up. You devoted one page of your opening brief to challenging the hostile work environment instruction, but then you don't identify which portion of that instruction you're challenging. Have you forfeited that argument? I don't think so, Your Honor, because the part of it that I'm challenging is that I state in there that under federal law, a hostile work environment, a retaliatory hostile work environment is a personnel action. If it's a personnel action, then you have to follow the BAB legal framework, and if you follow the BAB legal framework, you have to have a differential treatment portion of it, and then you have to have the portion where we shift the burden to the government. I described it both in the initial part of the brief and I believe in the argument and in the reply that the nature of the instruction was everything had to be because of EEO activity. Because of EEO activity is the traditional test which the Supreme Court rejected. The actual test that comes out of the 42 U.S.C. 2000 E16A is not a test that comes out of Hays, the Supreme Court case that often formed the basis of these kinds of decisions. It comes out of BAB v. Wilkie, and BAB v. Wilkie says personnel action, you've got to look to see if there was differential treatment, and if there is, the government has the burden of proof under Mount Healthy. I'll say one other thing in that regard. Well, I'm actually kind of moving on to a, I'm not sure this is a direct response to that one, but the but-for notion I'll address, I'm sure, after counsel's argument. Thank you. Thank you, Mr. Magri. You're welcome. Mr. Siakonin. Good morning, Your Honors. May it please the Court. Sean Siakonin for the Secretary of the Department of Veterans Affairs. There's a lot to unpack here. I'm not sure where to begin, but I'll try to cover all of the points that I have. BAB did not reject but-for causation. It explicitly adopted it. Our argument is not just that the district court here issued McLean's required instructions. The larger point is that all of the instructions taken together reasonably and correctly reflected the law. Another point is that the instructions on page 27 of our brief were indeed issued almost verbatim. I believe my opposing counsel said that I'm not really sure what he was saying, but if you compare document 149 at 34 and 35 with document 253 at 12, the only differences that I see between Mr. McLean's proposed instructions in this regard and the issued instructions are minor syntax. I don't see any substantive differences. Opposing counsel just said that there was no description of the BAB framework in the jury instructions. Well, number one, he's ignoring the verdict form, which clearly and unambiguously puts forth exactly the two-step framework that he himself advocates. And then the differential treatment instructions on page 27 of our brief also echo that same framework. So I agree with the court that these jury instructions were not perfect. Jury instructions don't have to be perfect. The district court, I think, did a good job. This court has said that if the totality of the instructions and the verdict form read together properly express the law, then there is no error, even though an isolated clause may be inaccurate, ambiguous, incomplete, or otherwise subject to criticism. And I think that's the worst that you can say about these instructions. And for the most part, they were better than that. Mr. McLean's objections pluck isolated phrases from context and, frankly, contort some of them. You can't read part of an instruction in a vacuum, and that's not how appellate courts review jury instructions. Discrete phrases or sentences cannot be read in a vacuum. And district courts have broad discretion to adjust the syntax. Yeah, well, let me ask you. When I said that the instructions were kind of confusing and weren't perfect, this is kind of what I meant, and I'd like you to address this. So there are two different theories of causation here. I mean, so you've got the multiple elements. I think it's fair to say the first element is fine, the second element is fine. All the fighting here is about the third element, which is causation. And correct me if I'm wrong about this, but the way I understand BAD is to basically say there are two different ways to prove causation. There's but-for causation. That gets you damages. There's this other kind of form of causation that might get you attorney's fees or injunctive relief. Am I right about that? That's not my understanding. Okay. What's your understanding of BAD, then? And this is from looking at pages 1177 and 1178 of BAD. And this appears elsewhere in BAD, in the Supreme Court's decision in BAD. This appears elsewhere, too. The Court says over and over again that but-for causation applies throughout. It can't be stopped in any way, regardless of the type of damages that the plaintiff is seeking. All that BAD did was to slightly expand the type of relief that plaintiffs can obtain in specific instances where they can show that alleged discrimination or retaliation was the but-for cause of differential treatment falling short of the end result. So that's all that BAD did. And this is on page 11— What do you mean when you say but-for cause of differential treatment falling short of the end result? How is it but-for cause if it doesn't affect the end result? It could be the but— You're talking about BAD? Well, retaliation or discrimination could be the but-for cause of differential treatment, in that the reason for that treatment was discrimination or retaliation. Whether or not retaliation or discrimination was the but-for cause of the end result. And that's one of the examples that the Court gives in one of the footnotes. I don't have that footnote in front of me, but it's mentioned in our briefs. And the Supreme Court said in BAD that hypothetically one example would be if an applicant— if a job application involved a scoring system in which points were allocated mathematically and one of the supervisors or evaluators added or subtracted points on the basis of race or some other protected characteristic. And the race or protected characteristic was the but-for cause of that allocation of points. Then that could be the but-for cause of differential treatment that played a role in the process, even if other evidence showed that that applicant still wouldn't have gotten the job or still would have gotten the job that it needed to find out. Can we get injunctive relief like next time you won't have the points deducted? How would that work, do you think? That's a good question. I'm not aware of any cases in which courts have yet issued injunctive relief, but that's my understanding is that the type of injunctive relief the plaintiffs can seek under BAD is an order from a court barring the agency from continuing to discriminate in a particular way. Okay. But if there's no— The key is that you get attorney's fees if you win that sort of injunctive relief, right? Perhaps, yes. You could. Could, yes. It's up. Could. I don't think that whether or not Mr. McClain would be entitled to attorney's fees in this case wasn't really argued in his brief. So here's the—and maybe I'm—I think you're right about that. I think we're actually on the same page about how to understand BAD. Here's part of the instructions that gives me some pause. I'd like you to comment on this. So the district court says at the beginning of its causation instruction, to determine that defendant took an adverse employment action because of plaintiff's protected EEO activity, you must decide that defendant would not have taken the action had plaintiff not engaged in the protected activity, but everything else had been the same. Isn't that inconsistent with, I mean, this sort of BAD theory that you could have— well, what do you say about that? It's not inconsistent because the way the court defined adverse employment action, but I'd agree that this is probably the one part of the instructions that was less than ideal. But I'd like to explain why I think that it was—by no means did it misstate the law, and I don't think that there really could have been any confusion when you take into account the rest of the instructions. So I think that the instruction you're referring to appears on page 10 of document 253. The instruction said that McLean could prevail if the secretary took that adverse employment action because of EEO activity. But on page 11, adverse employment action was defined to mean, quote, any type of action that would have made a reasonable employee reluctant to make or support a charge of discrimination or less likely to complain about or oppose alleged discrimination. Whether or not the alleged retaliation actually prevented Mr. McLean from obtaining one of the disputed positions. So any differential treatment that played a role in the decision-making process, I would qualify as an adverse employment action under this broad definition, including failure to interview, which is the only type of differential treatment that McLean has alleged in this case. And then to circle back to your earlier point, Your Honor, that instruction also I think has to be read in context with the instructions on page 12 and 27 of our brief about differential treatment, which these instructions come immediately after and on the same page as part of the adverse employment action instructions. Those are the instructions that Mr. McLean himself requested and that were issued nearly verbatim saying that federal sector law commands that personnel actions shall be free from any discrimination. It includes retaliation. It means differential treatment. Defendant has a duty of making personnel actions untainted by any consideration of retaliation and that McLean's protected activity therefore could not play any part in the way that the decision was made, regardless of outcome. I mean, this is differential treatment. All of this flows from BAB. It all makes clear that no differential treatment is okay in any part of the process if it plays a role in how a personnel decision is made. And this is exactly how Mr. McLean asked the court to instruct the jury. So that's differential treatment. So in sum, on the jury instructions, neither the instructions nor the verdict form prevented the court from finding for McLean in any circumstance permitted by BAB. And so just to make one more brief point here, many of Mr. McLean's arguments in his brief were difficult for us to address because they were somewhat vague and in some cases lacked citations to the record. We did the best that we could in our brief based on his brief, but if this court has specific questions about particular evidence or evidentiary rulings, in some cases it wasn't even clear in his brief if the purported evidentiary rulings existed, I'd be happy to answer them as best that I can or to file a 28-J letter. Well, he didn't really discuss those evidentiary issues in his argument, his opening argument. So we can review the briefs. The arguments can rest on the briefs. Thank you, counsel.  Mr. Magrie, you've reserved some time for rebuttal. The isolated clause notion is being used against Mr. McLean here because there's an isolated clause that is untested from the instruction he proposed. It ignores all the instructions before that and all the instructions after that that are pure, single-motive instructions. The footnote hypo that counsel was talking about is actually a hypo on page 1174. It is centerpiece hypo in this case, which shows that you don't have to affect the decision to have differential treatment. The key of that is that once that is established, the government gets the burden of proof, and that is under Mount Healthy and Texas v. LaSage. All of that's covered in our brief. I want to get, though, to the but for. But for means many things. In this case, but for is described in the only cases that are but for cases that are accepted by the Supreme Court in this decision is Texas v. LaSage and Mount Healthy. They are but for cases, but they're but for cases that shift the burden to the government, which the government never accepted in this case, and the court never instructed on it in this case. As far as but for, the simple and traditional but for test, and this is discussed in my discussion of their use of Bostock, the simple and traditional but for test is inapplicable because it involves a reason. You peel away all the reasons that the government has given for its action and see if it's only EEO activity as opposed to the other type of but for, which is in most cases where people put in circumstantial evidence and establish whether or not something happened. Now, that also gets to the differential treatment, which hasn't been discussed correctly yet in this case. Differential treatment, or in this argument, I'm sorry. Differential treatment is a concept that when you're sitting across from someone and you're considering his or her protected characteristic, you are not making a decision. You're not going to be able to make a decision that is free from any discrimination. It's the free from any discrimination that this court has to focus on. It's what the Supreme Court focused on. These hypotheticals were the subjects of briefs and arguments that we made. The answer about the, I think you got a correct answer to your question, Judge Grant, about injunctive relief, but the fact of the matter is that was something that was directly addressed in briefing and argument in that case. These things, differential treatment matters. It matters because the language of the statute is free from any, and what the government is doing is it lost what that meant in those cases, and it is now trying to recapture what it lost by causing jury instructions to get promulgated. If these jury instructions are acceptable, free from any is gone. Free from any, as defined by the Supreme Court in the Eleventh Circuit, cannot be tried in a case. The Supreme Court will have to relook at the entire discrimination that they made because they will not be able, plaintiffs will not be able to try the decision that they made because these arguments that were made by the government in this case and these instructions in this case totally ignore the free from any language. If that was the big mindset that the judges and the parties were litigating in the Supreme Court, one has to put oneself in that mindset to read these instructions and read these arguments and understand what the appropriate decision should be. Thank you. Thank you, Counsel.